UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VOEUTH CHETH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. C12-1744-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Voeuth Cheth appeals the denial of her benefits application, contending the ALJ erred by (1) failing to find diabetes, obesity, and depressive disorder were severe impairments at step two; (2) misevaluating the medical evidence; and (3) failing to properly assess her residual functional capacity ("RFC"). Dkt. 16. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Ms. Cheth is currently 40 years old, has a 10th grade education, and has worked as a teaching assistant and proof clerk.[1] On July 16, 2009, she applied for benefits, alleging disability as of November 5, 1999. Tr. 110. Her application was denied initially and on reconsideration.

---

[1] Tr. 36-37, 110, 133.

REPORT AND RECOMMENDATION - 1

Tr. 56-57. The ALJ conducted a hearing on May 10, 2011, finding Ms. Cheth not disabled. Tr. 14-30. As the Appeals Council denied Ms. Cheth's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-9.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [2] the ALJ found:

**Step one:** Ms. Cheth had not engaged in substantial gainful activity since July 16, 2009, the application date.

**Step two:** Ms. Cheth had the following severe impairments: somatoform disorder.

**Step three:** This impairment did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Cheth could perform a full range of work at all exertional levels and has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: the claimant has the ability to understand, remember, and carry out simple 1 to 2 step instructions; required of jobs classified at a level of svp 1 and 2 or unskilled work. The claimant would have average or moderate ability to perform sustained work activities (i.e., can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. The claimant can make judgments on simple work-related decisions and can respond appropriately to supervision, coworkers, and deal with changes all within a stable work environment.

**Step four:** Ms. Cheth could not perform her past relevant work.

**Step five:** Ms. Cheth could perform jobs existing in significant numbers in the national economy and, therefore, is not disabled..

Tr. 14-26.

## DISCUSSION

**A. The ALJ's consideration at step two of diabetes, obesity, and depressive disorder**

Ms. Cheth contends the ALJ erred at step two by failing to find diabetes, obesity, and

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

depressive disorder were severe impairments. Dkt. 16 at 3-7. At step two, Ms. Cheth has the burden to show that (1) she has a medically determinable impairment, and (2) the impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The step two inquiry is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" if the evidence establishes the impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Id*.

*1. Diabetes*

The ALJ in this case found Ms. Cheth had been diagnosed with non-insulin dependent diabetes. Tr. 19. The ALJ, however, found that Ms. Cheth's diabetes was controlled with metformin and that the objective medical evidence did not establish any significant vocational limitations associated with this impairment. *Id*.

The ALJ's finding that Ms. Cheth's diabetes was controlled by her prescribed medication is supported by substantial evidence in the record. In February 2009, Frederick Chen, M.D., noted Ms. Cheth's blood sugars were elevated and may be contributing to her dizziness, and started her on metformin. Tr. 194. In July 2009, Dr. Chen noted Ms. Cheth was "doing pretty well on her medications," though she continued to "complain of various somatic symptoms, like fatigue, blurry vision, sweatiness as a result of the Celexa she is on, and hair occasionally falling out." Tr. 187. In September 2009, Dr. Chen noted Ms. Cheth's glucose control seemed to be worsening, and increased her metformin dose. Tr. 275. By December 2009, Dr. Chen reported Ms. Cheth's diabetes "have been in pretty good control," and she was "doing pretty well overall." Tr. 267. In December 2010, Dr. Chen reported Ms. Cheth's diabetes have been "stable." Tr. 321.

Impairments that can be effectively controlled with medication are not disabling. *See*

REPORT AND RECOMMENDATION - 3

1  *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ did not err in
2  this case by concluding Ms. Cheth's diabetes has been treated with metformin, and such
3  treatment appeared to be effective. Therefore, Ms. Cheth's diabetes cannot be considered severe.

4  Ms. Cheth argues that a Physical Evaluation completed by Peter Pereivz, M.D., in
5  January 2004 supports her allegation of diabetes as a severe impairment as his assessment
6  indicated marked fatigue/malaise and moderate dizziness. Dkt. 16 at 4. Dr. Pereivz's
7  assessment, however, attributed Ms. Cheth's symptoms of fatigue/malaise and dizziness to
8  diagnoses of depression and fatigue, not to diabetes. Tr. 200-03. Dr. Pereivz specifically stated
9  Ms. Cheth may benefit from a full psychological evaluation as her symptoms seemed possibly
10 depression related. *Id*. Moreover, Dr. Pereivz's assessment, offered five and a half years prior to
11 the application date, does not contradict subsequent medical evidence of medical improvement.
12 Therefore, Dr. Pereivz's assessment cannot establish a severe impairment.

13 Ms. Cheth also argues that a Psychological/Psychiatric Evaluation prepared by Kirk Tan,
14 MSW, supports a finding that her diabetes is a severe impairment as he noted Ms. Cheth
15 complained of fatigue and black outs, and relied on her mother to care for her baby, cook, and
16 complete chores. Dkt. 16 at 4. Mr. Tan, however, did not note any complaints from Ms. Cheth
17 about her diabetes or establish any functional limitations resulting from diabetes. Tr. 204-09.

18 Further, evidence from an acceptable medical source is required to establish the existence
19 of a medically determinable severe impairment. 20 C.F.R. § 416.913(a). Acceptable medical
20 sources include licensed physicians, either medical or osteopathic doctors. *Id*. The ALJ may
21 consider evidence from other sources to show the severity of an impairment and how it affects a
22 claimant's ability to work. 20 C.F.R. § 416.913(d). Other sources include medical sources who
23 are not acceptable medical sources, including social workers, and nonmedical sources, including

REPORT AND RECOMMENDATION - 4

1  spouses or family members. *Id*. However, information from individuals who are not acceptable
2  medical sources cannot establish the existence of a medically determinable severe impairment.
3  Social Security Ruling ("SSR") 06–03p. *See also Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th
4  Cir. 1996), *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). While Mr. Tan's
5  observations may be relevant, they cannot establish the existence of severe diabetes. The ALJ
6  did not err in finding diabetes was not a severe impairment.

7      *2. Obesity*

8      At step two, the ALJ did not find obesity was a severe impairment. The ALJ noted Ms.
9  Cheth was obese, but found no physical abnormalities related to this impairment. Tr. 19, 254.
10  She had no shortness of breath, no decreased range of motion or weakness, and normal gait and
11  station. *Id*. The ALJ also found no evidence or suggestion in the record that her obesity led to
12  any functional limitations and, therefore, was non-severe. Tr. 19-20.

13      Ms. Cheth does not identify any evidence of specific functional limitations related to
14  obesity. Rather, she states she consistently presented to her medical providers with "symptoms
15  including imbalance, fatigue, joint pain and weakness, while caused by her other impairments
16  including her Somatization or Somatoform disorder, would be exacerbated by her obesity and
17  would further limit [her] ability to work." Dkt. 16 at 5. In other words, Ms. Cheth
18  acknowledges no medical source attributed limitations to her obesity, yet suggests the ALJ
19  should have assumed her alleged difficulties with imbalance, fatigue, joint pain and weakness,
20  would be exacerbated by her obesity and limit her ability to work.

21      The mere fact that Ms. Cheth is obese does not by itself indicate that she has workplace
22  limitations, especially where the record is devoid of any limitations attributed to this impairment.
23  As Ms. Cheth fails to offer a plausible argument as to how obesity significantly limited her

REPORT AND RECOMMENDATION - 5

1 ability to perform basic work activities or exacerbated her other impairments, the Court finds no
2 reversible error.

3     *3. Major depressive disorder*

4     Ms. Cheth contends that the ALJ erred in failing to find that her major depressive order
5 was a severe impairment. Dkt. 16 at 5-7. She argues the evidence clearly supports a finding that
6 this condition is severe, and that the ALJ erred in failing to find this impairment limited her
7 functioning.

8     Even if the ALJ erred in determining that Ms. Cheth's depression was not severe at step
9 two, the error was harmless because the ALJ considered and discussed Ms. Cheth's mental
10 limitations, including depression, in assessing Ms. Cheth's residual functional capacity. Tr. 22-
11 24. This Circuit has consistently held that an ALJ's error in finding a claimant's impairment is
12 not severe at step two is harmless if the ALJ considers the resulting limitations caused by the
13 impairment later in the sequential evaluation process. *See Lewis v. Astrue*, 498 F.3d 909, 911
14 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 683-84 (9th Cir. 2005). Aside from her
15 assertions, Ms. Cheth has not set forth any functional limitations as a result of her depression that
16 the ALJ failed to consider. Accordingly, any error the ALJ may have committed at step two
17 pertaining to depression was harmless.

18 **B.     The ALJ's evaluation of the medical evidence**

19     Ms. Cheth next contends the ALJ erred in evaluating the opinions of Frederick Chen,
20 M.D., Suzanne Canning, M.D., and Margaret Sekijima, ARNP. In general, more weight should
21 be given to the opinion of a treating physician than to a non-treating physician, and more weight
22 should be given to the opinion of an examining physician than to a non-examining physician.
23 *Lester v. Chater*, 80 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a

REPORT AND RECOMMENDATION - 6

treating or examining physician's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830–31. Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

        1.        *Frederick Chen, M.D.*

The record shows Dr. Chen treated Ms. Cheth for somatoform disorder, depression, diabetes, and hypertension from January 2009 to December 2010. Tr. 185-97, 264-78, 308-20. On July 30, 2009, Dr. Chen opined Ms. Cheth was limited to part-time sedentary work. Tr. 198.

The ALJ rejected Dr. Chen's opinion finding it was inconsistent with the examination findings of Katherine Moreno, M.D., and with the objective medical evidence as a whole. Tr. 23. In addition, the ALJ found Dr. Cheth's opinion, provided on a check-box form, was not supported by a physical examination of Ms. Cheth. *Id.* Instead, the ALJ gave great weight to the opinion of Dr. Moreno, M.D., who opined Ms. Cheth had no functional limitations in standing, walking, sitting, lifting, and carrying. Tr. 252-56. The ALJ credited Ms. Moreno's opinion because it was consistent with the medical record and supported by her clinical findings. Tr. 23.

An ALJ may properly reject a treating physician's opinion that is inconsistent with the record and not supported by clinical evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Lester*, 80 F.3d at 830. In addition, an ALJ may reject a treating physician's opinion

REPORT AND RECOMMENDATION - 7

that is brief, conclusory, and not supported by clinical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Ms. Cheth contends the ALJ ignored Dr. Chen's treatment notes indicating he performed physical examinations. While it appears Dr. Chen conducted a physical examination of Ms. Cheth on July 14, 2009, Dr. Chen reported normal examination findings. Tr. 187. For example, Ms. Cheth reported she had been spending time gardening with her children, and Dr. Chen stated that she was a "[t]hirty-six-year-old woman with somatic complaints doing pretty well on her medications." *Id*. Dr. Chen found Ms. Cheth had no chest pain, no shortness of breath, and her other systems were negative. *Id*. Subsequent physical evaluations were similarly benign. Tr. 264, 267, 274, 275, 337. Given the record here, the Court cannot say the ALJ erred.

*2.     Suzanne Canning, M.D.*

On November 17, 2009, Dr. Canning conducted a psychiatric examination of Ms. Cheth. Tr. 211-15. Dr. Canning opined Ms. Cheth could perform simple and repetitive tasks, accept instructions from supervisors, interact with coworkers and the public, and perform work on a consistent basis without special instructions or supervision. Dr. Canning also opined Ms. Cheth could maintain regular attendance in the workplace, but might have difficulty completing a normal workday/workweek without interruptions from her psychiatric condition.

The ALJ gave great weight to Dr. Canning's opinion Ms. Cheth could perform simple work, accept instruction from supervisors, and interact with the public, finding them consistent with the overall objective medical evidence and with Ms. Cheth's activities of daily living. Tr. 23. However, the ALJ rejected Dr. Canning's statement that Ms. Cheth might have difficulty completing a normal workday/workweek without interruptions from her psychiatric condition on the grounds that Dr. Canning's limitation was inconsistent with Ms. Cheth's activities. *Id*. The

ALJ did not explain how Dr. Canning's opinion was inconsistent with Ms. Cheth's activities.

The record shows Ms. Cheth's activities were: performing some household chores such as laundry, limited cleaning, and preparing frozen dinners; reading for a few minutes at a time; and watching television. Tr. 22. In addition, Ms. Cheth gets her four children ready for school in the morning, although her older daughter helps with the children. Tr. 22-23.

These activities, alone, are not inconsistent with Dr. Canning's opinion that Ms. Cheth might have difficulty completing a normal workday/workweek without interruptions from her psychiatric condition. Activities such as light household chores, cooking meals, and grocery shopping are activities that do not necessarily translate to the work environment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) (holding that grocery shopping, driving a car, and limited walking for exercise are not inconsistent with disability); *Reddick v. Chater*, 157 F.3d 715, 723 n. 1 (9th Cir. 1998) (noting that limited cooking, cleaning, and shopping are not indicative of an ability to engage in sustained work activity). Accordingly, substantial evidence does not support the ALJ's determination to discredit Dr. Canning's opinion on the basis of Ms. Cheth's activities. On remand, the ALJ should reevaluate Dr. Canning's opinion.

*3. Margaret Sekijima, ARNP*

Ms. Cheth also argues that the ALJ erred in evaluating the opinion of psychiatric nurse practitioner Margaret Sekijima, ARNP. Dkt. 16 at 9-10. As a nurse practitioner, Ms. Sekijima is not an "acceptable medical source." *See* 20 C.F.R. § 416.913(a). Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 416.913(a) and (d). The ALJ may evaluate opinions of other sources using the same factors applied to evaluate medical opinions of

REPORT AND RECOMMENDATION - 9

1 acceptable medical sources. SSR 06-03p. These factors include the length and frequency of the
2 treating relationship, how consistent the opinion is with other evidence, the evidence the source
3 presents to support the opinion, how well the source explains the opinion, whether the source has
4 a specialty or area of expertise related to the impairment, and any other relevant factors. *Id*. But
5 the ALJ may give less weight to opinions of other sources than to those of acceptable medical
6 sources. *Id*. The ALJ must give germane reasons for rejecting the opinions from other sources
7 that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

8 Ms. Sekijima completed a mental residual functional capacity assessment in April 2011.
9 Tr. 302-07. She opined Ms. Cheth is unable to maintain simple work activities due to major
10 depressive disorder and somatization disorder. Tr. 302. In addition, she opined Ms. Cheth had
11 marked limitations in maintaining attention and concentration for at least two straight hours,
12 completing a normal workday/workweek without interruptions from her psychologically based
13 symptoms, interacting appropriately with the public, and traveling to unfamiliar settings and
14 using public transportation. Tr. 303-04.

15 The ALJ gave little weight to Ms. Sekijima's opinions because they were inconsistent
16 with her own treatment notes which showed improvement with psychiatric medication and
17 normal mental status examinations. Tr. 24, 308, 312, 313. The discrepancy between Ms.
18 Sekijima's treatment notes and her opinions is a germane reason to discount her opinions, and
19 that finding is supported by substantial evidence. For example, in August 2010 Ms. Sekijima
20 noted Ms. Cheth had a good response to Wellbutrin: she was alert, affect was constricted but
21 calm, mood hopeful, speech straightforward and organized, insight and judgment were fair. Tr.
22 313. In September 2010, Ms. Sekijima reported Ms. Cheth's major depressive disorder had
23 improved with low dose buproprion: she was sleeping good, mood is good, nicely dressed and

REPORT AND RECOMMENDATION - 10

1  groomed, affect was blunted but non-distressed, she was calm, thought processes were logical,

2  judgment and insight were fair. Tr. 312. By March 2011, Ms. Sekijima noted Ms. Cheth was

3  "functioning fairly well in stressful circumstances with more stable mood and decreased anger."

4  Tr. 308. Accordingly, the ALJ did not err in discounting Ms. Sekijima's opinions.

5  **C.      The ALJ's assessment of Ms. Cheth's physical residual functional capacity**

6  At step four, the ALJ must identify the claimant's functional limitations or restrictions,

7  and assess his or her work-related abilities on a function-by-function basis, including a required

8  narrative discussion. *See* 20 C.F.R. § 416.945; SSR 96-8p. RFC is the most a claimant can do

9  considering his or her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the

10 limiting effects of all of the claimant's impairments, including those that are not severe, in

11 determining RFC. *Id*.

12 Ms. Cheth contends substantial evidence does not support the ALJ's finding that Ms.

13 Cheth has the RFC to perform a full range of work at all exertional levels. She argues the ALJ

14 omitted limitations opined by her treating providers that would exertionally limit her. Dkt. 16 at

15 13. Ms. Cheth's argument is premised on her previous arguments about the medical evidence.

16 A claimant does not establish an ALJ's RFC determination is incorrect by simply restating her

17 argument that the ALJ's finding did not account for all of her limitations because the ALJ

18 improperly discounted the medical evidence. *See Stubbs-Danielson v. Astrue*, 529 F.3d 1169,

19 1175-76 (9th Cir. 2008). Because the ALJ properly evaluated the evidence regarding Ms.

20 Cheth's physical limitations, Ms. Cheth's assertion that the ALJ erred in assessing Ms. Cheth's

21 physical RFC fails. *See id.* (rejecting claimant's reiteration of medical evidence arguments).

22 **D.      The ALJ's assessment of Ms. Cheth's mental residual functional capacity**

23 Finally, Ms. Cheth contends the ALJ failed to properly assess her mental RFC and erred

REPORT AND RECOMMENDATION - 11

at step five by posing a hypothetical to the vocational expert that did not include all of her nonexertional limitations. Dkt. 16 at 14-16. The Court need not resolve these contentions as the ALJ erred in evaluating the opinion of Dr. Canning and must necessarily reevaluate on remand what impact, if any, this has on Ms. Cheth's RFC, and any hypothetical question that is posed to the vocational expert at step five.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reevaluate the opinion of Dr. Canning, develop the medical record as appropriate, reassess Ms. Cheth's residual functional capacity as necessary, and proceed to steps four and five as appropriate.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **October 8, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **October 11, 2013.** If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 24th day of September, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12

REPORT AND RECOMMENDATION - 13